# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JOHN HEGELER,

    Plaintiff,

v.

THE ILLINOIS STATE TOLL HIGHWAY AUTHORITY, JACK HARTMAN, JEFF DAILEY, AND BRIAN MCPARTLIN,

    Defendants.

No. 05 C 2739
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff John Hegeler was terminated from his position as a Geometrics Technician for the Illinois State Toll Highway Authority ("Tollway") on April 7, 2004. He subsequently filed a seven-count complaint, which Defendants successfully removed to federal court, claiming denial of administrative review (Count I), seeking a *writ of certiorari* (Count II) and a declaratory judgment and/or injunctive relief (Count III), alleging tortious interference with contract (Count IV), breach of contract (Count V), due process violations (Count VI) and retaliatory discharge (Count VII). Defendants seek dismissal of all seven claims.

A motion to dismiss tests the sufficiency of a complaint, not the merits of a case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). I should grant Defendants' motion only if Hegeler cannot prove any set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Furthermore, I must accept all well-pleaded factual allegations in the Complaint as true, drawing all reasonable inferences from those facts in Hegeler's favor. *Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir. 2002). I may only grant Defendants' motion if "no relief could be granted under any set of facts

that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

***Plaintiff's Handbook-based Claims***

Defendants' fundamental objection to Hegeler's Complaint is his purportedly "at-will" status, which would prohibit his breach of contract claim, and by extension, his claims for *writ of certiorari*, administrative review, declaratory judgment, and of due process violations and tortious interference with contract. Hegeler contends that the Tollway's employee manual created an enforceable contract under Illinois law and entitles him to relief.

Employment relationships in Illinois are presumed to be terminable at-will by either party, a presumption overcome only when the parties have contracted otherwise. *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (1987). However, Illinois law recognizes that an employee handbook may create enforceable contractual rights if the traditional requirements for contract formation are present. *Id*. A handbook creates a valid, enforceable employment contract when it: 1) contains a promise sufficiently clear that an employee would reasonably believe a promise had been made, 2) was disseminated in a manner causing an employee to believe that an offer had been extended, and 3) is accepted by the employee's commencement of employment or continued work. *Id*.

Hegeler, relying on the text of the Tollway's revised manual, dated March 1, 1997, contends that the manual contains the "clear promise" required under Illinois law: a promise that he would not be terminated without resort to the progressive discipline policy contained within the manual. The Tollway manual calls for the use of a progressive discipline procedure and a grievance procedure for employees dissatisfied with the progressive discipline procedure's

outcomes. An employee handbook's promise of an "enforceable right to . . . particular disciplinary procedures" may constitute the "clear promise" necessary for contract formation. *Duldulao*, 505 N.E.2d at 318. However, the handbook at issue in *Duldulao* used language promising employees an absolute right to its procedures. *See id.* ("termination contemplated by [the employer] *cannot occur* without proper notice and investigation . . . employees *are never* dismissed without prior written admonitions . . . and warning notices . . . *are required* before an employee is dismissed." (emphasis in original) (internal quotations omitted).

In this case, the language of the Tollway manual is not absolute in its promises. The Manual states:

> It is the policy of the Authority to use progressive discipline, *whenever possible*, in an effort to maintain compliance with established rules of conduct and to correct improper behavior.

(Defs.' Reply, Ex. 1, p. 2 (Ch.1, §A)) (emphasis added). Hegeler argues that "whenever" signifies "always" or "every time that." (Pl. Resp. at 7). But Hegeler ignores the word "possible." Read together, these words indicate that the progressive discipline policy will be used in most instances but is not mandatory. *Cf. Wheeler v. Phoenix Co. of Chicago*, 658 N.E.2d 532, 535 (Ill. App. 1995) (observing that an employment handbook creates enforceable contract rights when, for example, it contains "a clear statement that an employee can only be discharged pursuant to a progressive disciplinary policy") (citation omitted).[1]

Moreover, the 1997 manual on which Hegeler relies contains an explicit disclaimer:

---

[1] Hegeler appears to concede the non-mandatory nature of the progressive discipline policy, observing that "cognizable events *must generally* first occur prior to termination." (Pl. Resp. at 8) (emphasis added).

3

> Except for employees covered by a bargaining contract, the [Tollway] maintains an "at will" employment relationship with all employees . . . No manager, supervisor, or employee is authorized to enter into any formal agreement or contract of employment on behalf of the Tollway without the express written approval of the Board of Directors of the [Tollway].

(Defs.' Rep., Ex. 1, p. 1 (Ch.1, §A)). Disclaimers "foreclose[ ] any reasonable belief of contract formation." *Boll v. Hyatt Corp.*, 614 N.E.2d 71, 74 (1993). *See also Habighurst v. Edlong Corp.*, 568 N.E.2d 226, 228 (Ill. App. Ct. 1991) ("the existence of disclaiming language in an employee handbook . . . preclude[s] the formation of a contract"). *Cf. Duldulao*, 505 N.E.2d at 319 (observing that there were no disclaimers in a handbook found to contain the clear promise necessary for contract creation).

When a disclaimer is "clear and forthright," it is a "complete defense to a suit for breach of contract based on an employee handbook." *Workman v. UPS, Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000) (disclaimer stated that "this Policy Book is not a contract of employment and does not affect your rights as an employee of UPS"). Illinois cases upholding handbooks as binding contracts despite the presence of disclaimers do not control the outcome of this case. *See, e.g., Perman v. Arcventures, Inc.*, 554 N.E.2d 982 (Ill. App. Ct. 1990) (holding that a disclaimer did not preclude the formation of a contract where: a) the disclaimer was not conspicuous; and b) the handbook contained explicit promises, e.g., "discharges must be approved in advance by the director of employee relations"); *and Wheeler*, 658 N.E.2d at 537 (ruling that a handbook created contractual obligations in the absence of "conspicuous disclaimers"). In light of this clear disclaimer, found on the first page of the Manual, I find no contract existed and that Hegeler

remained an at-will employee of the Tollway.[2]  Defendants' Motion to Dismiss Hegeler's breach of contract and tortious interference with contract claims is granted.

***Plaintiff's Remaining Contract-based Claims***

Defendants seek dismissal of Plaintiff's claims for administrative review, *writ of certiorari*, declaratory judgment or injunctive relief and due process on the ground that as an at-will employee, Plaintiff has no property interest that would entitle him to these remedies.  *See, e.g., Buccieri v. Wayne Township*, 444 N.E.2d 249, 252 (Ill. App. Ct. 1982) ("[a] public employee who seeks review of his discharge must allege facts showing a property interest in his employment which is encompassed by due process protection").  Plaintiff does not deny that his claim to a property interest in his position with the Tollway is premised solely upon his argument that the Tollway's manual created enforceable contract rights.[3]  Having found that the manual created no such contractual rights, I deny these claims as Hegeler has waived any argument that another basis for these rights may be found within his Complaint (nor is one evident).[4]

---

[2] I do not, and need not, consider Defendants' argument that Hegeler expressly acknowledged in writing that the Tollway Manual did not constitute an enforceable contract. Defendants support this argument with documents that were not attached to, or contained within, the Complaint.  Unlike the manual itself, the alleged "waivers" are not central to Plaintiff's Complaint, but only to the defense of the claim and I could only consider them by converting the motion to dismiss into one for summary judgment.  *See Batteast Constr. Co. v. Public Bldg. Comm'n*, 195 F. Supp. 2d 1045, 1051 (N.D. Ill. 2002).

[3] In response to Defendants' Motion, Plaintiff states that "Defendants failed to follow these established procedures and have otherwise violated his rights. Therefore, Plaintiff has sufficiently plead [sic] a due process claim." (Pl. Resp. at 11).  Nonetheless, Plaintiff fails to identify how his Complaint alleges a due process violation aside from his alleged contractual right to continued employment under the terms of the Tollway's manual.

[4] I do not address, as it is not necessary, Defendants' arguments that Plaintiff's claim for administrative review and for a common law *writ of certiorari* are time-barred.

*Plaintiff's Retaliatory Discharge Claim*

Hegeler also asserts a claim of retaliatory discharge against the Tollway and Defendants Hartman, Dailey and McPartlin for discharging him in violation of public policy. "Retaliatory discharge is an exception to the general rule that an 'at-will' employment is terminable at any time for any or no cause." *Leweling v. Schnadig Corp.*, 657 N.E.2d 1107, 1109 (Ill. App. Ct. 1995) (citing *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878 (1981)). Hegeler may not pursue this claim against Defendants Hartman, Dailey and McPartlin, so I consider here his claim only as against Defendant Tollway. *See Buckner v. Atlantic Plant Maint.*, 694 N.E.2d 565 (Ill. 1998) (holding that the tort of retaliatory discharge does not extend to an employee or agent of an employer who orders or effectuates the discharge of an employee in violation of public policy).

A plaintiff can establish the tort of retaliatory discharge by showing that, "(1) he exercised a statutory or constitutional right; (2) he was discharged in retaliation for his activity; and (3) that the defendant's conduct was motivated by unlawful considerations, that is, the discharge was in contravention of a clearly mandated public policy." *Selof v. Island Foods*, 623 N.E.2d 386, 387 (Ill. App. Ct. 1993) (citations omitted). Hegeler alleges in his Complaint that he was discharged from the Tollway for the sole reason of his affiliation (or lack thereof) with a political party, and argues that his discharge violated the clearly-mandated public policy of freedom of speech and association as guaranteed by the First Amendment.[5]

---

[5]In his response to the Tollway's motion to dismiss his claim, Hegeler properly identifies the freedom of association as a "cherished constitutional right." (Pl. Mem. at 13-14). The termination of a public employee because of political affiliation can constitute a violation of that employee's constitutional rights. *See Branti v. Finkel*, 445 U.S. 507, 517 (1980). However, Hegeler's Complaint alleges the tort of retaliatory discharge, not a violation of his First Amendment rights.

6

In Illinois, retaliatory discharge is a narrow exception to the at-will employment rule, applied only in "compelling circumstances" to "vindicate the public policy underlying the employee's activity." *Buckner*, 694 N.E.2d at 569 (citation omitted). "Illinois courts have repeatedly expressed their reluctance to expand the tort of retaliatory discharge . . . and nowhere has this been more apparent than with respect to the 'public policy' element." *Hicks v. Resolution Trust Corp.*, 970 F.2d 378, 381 (7th Cir. 1992) (citation omitted). For a plaintiff seeking to establish the tort of retaliatory discharge,

> merely stating a constitutional or statutory provision is not enough. The policy identified in the complaint must either strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed . . . or involve the protection of each citizen's health and safety.

*Leweling*, 657 N.E.2d at 1109. To date, Illinois courts have permitted claims of retaliatory discharge in two circumstances: where an employee is discharged for filing or planning to file a claim under the Workers' Compensation Act, or where an employee is discharged in retaliation for reporting the employer's illegal or improper conduct (i.e., "whistleblowing"). *See Selof*, 623 N.E. 2d at 387.

Defendants rely on *Barr v. Kelso-Burnett* for the proposition that a claim of retaliatory discharge cannot be based on an employer's alleged interference with a public employee's exercise of constitutional rights, including freedom of speech and assembly. 478 N.E.2d 1354 (Ill. 1985). That case, however, "involved a private employer, and the Illinois Supreme Court stressed that the First Amendment is directed only to governmental actors." *Miller v. Illinois*, 681 F. Supp. 538, 547 (N.D. Ill. 1988) (citing *Barr*, 478 N.E.2d at 1356-57). *Barr* requires the dismissal of a complaint in which the plaintiff is an employee of a private employer but seeks to

7

base a claim of retaliation on a constitutional provision (the First Amendment) concerning "only limitations on the powers of government but mandat[ing] nothing concerning the relationship of private individuals–including private individuals in the employer-employee relationship." *Selof*, 623 N.E.2d at 388 (citing *Barr*, 478 N.E.2d 1354).[6]

"The test for determining if the complaint states a valid cause of action is whether the public policy clearly mandated by the cited provisions is violated by the plaintiff's discharge." *Barr*, 478 N.E.2d at 1357. Hegeler has alleged that he was discharged for the sole reason of his perceived affiliation (or lack thereof) with a particular political party. The public policy protecting the right of most government employees to freely associate, or to not associate with a particular party, is well-established. *See, e.g., Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990); *Branti v. Finkel*, 445 U.S. 507, 517 (1980). I agree with Judge Shadur that "[w]hen as here the employer *is* a governmental actor, there is no doubt Illinois would regard the First Amendment . . . as establishing a clearly mandated public policy." *Miller*, 681 F. Supp. at 547. I find that Hegeler has sufficiently alleged the elements of a claim of retaliatory discharge.

---

[6]The *Barr* Court observed that, "It is well established that the constitutional guarantee of free speech is only a guarantee against abridgement by the government, Federal or State; the Constitution does not provide protection or redress against private individuals or corporations which seek to abridge the free expression of others." 478 N.E.2d at 1356 (citations omitted).

For these reasons, Defendants' Motion is GRANTED IN PART and DENIED IN PART. Defendants' Motion to Dismiss Counts I, II, III, IV, V and VI is GRANTED. Defendants' Motion to Dismiss Plaintiff's claim of retaliatory discharge (Count VII) against Defendants Hartman, Dailey and McPartlin is GRANTED but DENIED as to Defendant Tollway.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: November 1, 2005